UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
PATRICIA FERRARI,                                                      Case No:

                            Plaintiff,


              -v-                                                     **COMPLAINT**
                                                                                     **WITH JURY DEMAND**

VOXX INTERNATIONAL CORPORATION, ROBERT
STANDISH, LORIANN SHELTON, and PATRICK
LAVELLE,

                            Defendants.
-------------------------------------------------------------------X

      Plaintiff, PATRICIA FERRARI ("Ms. Ferrari" or the "Plaintiff") by and through her attorneys, The Law Offices of William Cafaro, complaining of VOXX INTERNATIONAL CORPORATION ("Voxx"), ROBERT STANDISH ("Mr. Standish"), LORIANN SHELTON ("Ms. Shelton"), and PATRICK LAVELLE ("Mr. Lavelle") (all together as "Defendants") hereby alleges as follows:

### *NATURE OF THE CASE*

      1.    This action is brought under the Family and Medical Leave Act of 1993, 29 U.S.C. 2601 *et seq*. ("FMLA") and New York State Human Rights Law, New York Exec. Law §290 *et seq.* ("NYSHRL") and other appropriate rules, regulations, statutes, and ordinances.

      2.    Ms. Ferrari - an individual with a disability and on intermittent FMLA leave - claims that her former employers - a corporation and members of management - interfered with the rights afforded to her under the FMLA; discriminated against her on the basis of her disability (and/or perceived disability); retaliated against her for exercising her rights under the FMLA and for otherwise engaging in protected activity; and unlawfully terminated her employment.

1

## *THE PARTIES*

3. The Plaintiff is an individual who is a resident of Suffolk County, New York.

4. At all times herein pertinent, Plaintiff was an "employee" of the Defendant and within the meaning of the NYSHRL.

5. At all times herein pertinent, Plaintiff was a "person" within the meaning of FMLA and NYSHRL.

6. Voxx was and is a foreign business corporation authorized to do business in NY with a place of business at 180 Marcus Blvd, Hauppauge, NY 11788.

7. Mr. Standish was and is Voxx's Vice President of Global Operations.

8. Ms. Shelton was and is Voxx's Chief Operation Officer.

9. Mr. Lavelle was and is Voxx's Chief Executive Officer.

10. Defendants were and are "employers" as that term is defined in the FMLA, 29 U.S.C. §2611(4) and upon information and belief had fifty (50) or more persons in their employ at all times herein pertinent.

11. At all times herein pertinent, Defendants were employer as defined by NYSHRL and had four (4) or more persons in their employ.

## *JURISDICTION AND VENUE*

12. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding the deprivation of Plaintiff's rights under the FMLA. The Court has supplemental jurisdiction over Plaintiff's related claims arising under State and local law pursuant to 28 U.S.C. § 1367(a).

13. Pursuant to 28 U.S.C. § 1391(b)(2), venue is appropriate in this Court as all actions comprising the claims for relief occurred within this judicial district.

## *MATERIAL FACTS*

14. According to its website, Voxx is a "leading global manufacturer and supplier of Automotive and Consumer Electronics products, with an expanding portfolio of iris-based authentication solutions for the rapidly growing biometrics industry." *See* https://www.voxxintl.com/history/

15. **From 1995 through January 17, 2022,** Plaintiff worked for Voxx in Hauppauge, New York.

16. From 2011 through January 17, 2022, Plaintiff worked as a AVP Global Sales Operations, a key managerial role with a six-figure salary and fringe benefits.

17. Due to her exemplary performance, Plaintiff was never written up or disciplined for any reason.

18. On **January 6, 2020**, Plaintiff was involved in a serious car accident on the Long Island Expressway, causing her considerable injuries including brain injuries. Because of her injuries, she promptly went on medical leave.

19. Prior to Plaintiff being cleared to return work, Defendants alleged that, due to the COVID-19 pandemic and restrictions at the Company, she only had two choices: (1) be indefinitely laid off with no guarantees of being called back or (2) going forward work a four-day work week (as opposed to five-day work week) with a 20% pay cut. They insisted she promptly make the decision, or it would be made for her.

20. Unable to be survive without health insurance and a salary, particularly while she was still disabled and supporting her young daughter, Plaintiff accepted the second "choice" and returned to work on **June 1, 2020**.

21. Despite on paper having only a four-day workweek and a sizable pay cut, Defendants worked Plaintiff - an employee who they knew had a serious ongoing disability - to the bone, demanding that she work and produce the equivalent of (at least) a five-day workweek.

22. Dedicated to excellence and professionalism, Plaintiff graciously worked around the clock, made herself available whenever she was needed, and performed her duties exceptionally well.

23. **On March 2, 2021**, Defendants advised Plaintiff that - due to her ongoing disability for which she frequently went to the doctor and received physical therapy - they were permanently changing her work schedule to four days per week with a 20% pay cut.

24. Plaintiff objected to Defendants' decision, stating that she fully intended to return to a five-day work schedule, with her full salary and benefits, once she was cleared by her doctors.

25. Defendants replied that they would never again permit Plaintiff to work more than a four-day workweek (or receive her full salary), while paradoxically warning her that working four days per week was a problem because she was allegedly "shorting the Company a day." This openly revealed their disdain for her disability and their desire to punish her for needing, requesting, and taking accommodations.

26. Plaintiff complained to human resources about this alleged mandatory schedule and pay change, but they ignored her.

27. On or about **March 10, 2021**, Plaintiff made a formal request for intermittent FMLA leave with a note from her doctor, asking to have Fridays off. The request was granted.

28. Plaintiff remained on this intermittent FMLA leave from March 2021 through January 17, 2022. Throughout this entire time, Plaintiff regularly updated human resources with the status of her condition and provided all requested medical documents.

29. Despite furnishing Defendants with all requested information and documents related to her disability and FMLA leave, Defendants regularly subjected her to a pervasive hostile work environment; disrupted her FMLA leave and requested accommodations due to their discriminatory animus; and retaliated against her for engaging in protected activity.

30. For example, even though under her intermittent FMLA leave Plaintiff was expressly permitted to take Fridays off to aid in her recovery, Defendants regularly harassed her for doing so; regularly attempted to force her to change her FMLA schedule knowing it prejudiced her health; and falsely accused her of poor performance and evading her responsibilities.

31. Compounding the problem, starting on or about **March 26, 2021** - a few days after complaining to human resources about retaliation and requesting intermittent FMLA leave - Defendants retaliated against her by changing her job description and removing all her direct reports and assigning them to a different manager, all of which amounted to a demotion and made her job considerably harder.

32. Further showcasing their discriminatory animus and desire to push Plaintiff out of her job, from January 2020 through January 2022, Defendants routinely gave bonuses and raises to Plaintiff's subordinates and co-workers, but gave none to her.

33. Unable to break Plaintiff's will and force her to quit her employment, **on January 17, 2022**, Defendants unceremoniously fired Plaintiff and notably refused to offer her (or even inform her about) other job openings at Voxx, undoubtedly because they wanted her gone at all costs.

34. Defendants' discriminatory conduct was both severe and pervasive, as it subjected Plaintiff to discriminatory acts on a recurring basis, without end. This conduct was and is personally insulting, offensive and abusive to Plaintiff, and would be objectively insulting,

offensive and abusive to others. Furthermore, it was continuous and pervasive through the end of her employment.

35. Employees outside Plaintiff's protected classes were treated more favorably than Plaintiff.

36. Plaintiff was unlawfully discharged for exercising her rights under the FMLA, due to her disability and/or perceived disability, and in retaliation for engaging in protected activity, in violation of the NYSHRL.

## FIRST CAUSE OF ACTION
## INTERFERENCE WITH RIGHTS UNDER THE FMLA

37. Plaintiff repeats, reiterates and reasserts all allegations contained in the preceding paragraphs of this complaint as if fully set forth herein at length.

38. Defendants engaged in a course of conduct, as outlined above, which interfered with Plaintiff's rights under the FMLA.

39. By engaging in such interference, Defendants willfully violated the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.*

40. As a proximate result of Defendants' interference with Plaintiff's rights under the FMLA, Plaintiff has suffered and continues to suffer substantial losses, including loss of past earnings, loss of future earnings, and loss of other employment benefits in an amount to be proven at trial.

41. As a further proximate result of Defendants' actions, Plaintiff suffered and continues to suffer severe and lasting embarrassment, humiliation, mental and physical anguish and other incidental consequential damages and expenses in an amount to be proved at trial.

## SECOND CAUSE OF ACTION
## FMLA RETALIATION

42. The Plaintiff hereby incorporates all preceding paragraphs of this complaint with the same force and effect as if fully set forth at length.

43. Defendants engaged in a course of conduct, as outlined above, in retaliation for the Plaintiff exercising protected rights under the FMLA.

44. By engaging in such retaliation, Defendants willfully violated the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.*

45. As a proximate result of Defendants' retaliation against Plaintiff for exercising her protected rights, Plaintiff has suffered and continues to suffer substantial losses, including loss of past earnings, loss of future earnings, and loss of other employment benefits in an amount to be proved at trial.

46. As a further proximate result of Defendants' actions, Plaintiff suffered and continues to suffer severe and lasting embarrassment, humiliation, mental and physical anguish and other incidental consequential damages and expenses in an amount to be proved at trial.

### THIRD CAUSE OF ACTION
### DISABILITY DISCRIMINATION
### UNDER NYSHRL

47. Plaintiff repeats, reiterates and reasserts all allegations contained in the preceding paragraphs of this complaint as if fully set forth herein at length.

48. Defendant engaged in unlawful discriminatory practices in violation of NYSHRL by discriminating against Plaintiff based upon her disability and/or perceived disability and otherwise subjecting her to a hostile work environment, including but not limited to, subjecting her to disparate working conditions and denying her the opportunity to work in an employment setting free of unlawful discrimination and harassment.

49. Defendants discriminated against Plaintiff on the basis of her disability and/or perceived disability, in violation of NYSHRL, by creating, fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment.

50. Defendants further discriminated against Plaintiff on the basis of disability and/or perceived disability.

51. As a direct and proximate result of the Defendants' actions, Plaintiff has suffered and continues to suffer substantial losses, including the loss of past earnings, the loss of future earnings, and the loss of other employment benefits in an amount to be proved at trial.

52. As a direct and proximate result of Defendants' actions, Plaintiff suffered and continues to suffer severe and lasting embarrassment, humiliation, mental and physical anguish and other incidental consequential damages and expenses in an amount to be proved at trial.

53. Therefore, Plaintiff is entitled to all remedies and relief afforded by NYSHRL, including but not limited to, back pay, front pay, emotional distress, punitive damages and attorney's fees and costs, as well as any and all injunctive relief.

## FOURTH CAUSE OF ACTION
## RETALIATION UNDER NYSHRL

54. Plaintiff repeats, reiterates and reasserts all allegations contained in the preceding paragraphs of this complaint as if fully set forth herein at length.

55. Defendants engaged in unlawful discriminatory practices in violation of NYSHRL by retaliating against Plaintiff for opposing discriminatory practices and engaging in other protected activity.

56. As a direct and proximate result of the Defendants' actions, Plaintiff has suffered and continues to suffer substantial losses, including the loss of past earnings, the loss of future earnings, and the loss of other employment benefits in an amount to be proved at trial.

57. As a direct and proximate result of Defendants' actions, Plaintiff suffered and continues to suffer severe and lasting embarrassment, humiliation, mental and physical anguish and other incidental consequential damages and expenses in an amount to be proved at trial.

58. Therefore, Plaintiff is entitled to all remedies and relief afforded by NYSHRL, including but not limited to, back pay, front pay, emotional distress, punitive damages and attorney's fees and costs, as well as any and all injunctive relief.

## FIFTH CAUSE OF ACTION
*Aiding and Abetting Under NYSHRL*

59. Plaintiff repeats, reiterates and reasserts all allegations contained in the preceding paragraphs of this complaint as if fully set forth herein at length.

60. The NYSHRL provides that "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so."

61. Mr. Standish, Ms. Shelton, and Mr. Lavelle violated the section cited herein by aiding, abetting, inciting, compelling, and/or coercing the above discriminatory and unlawful conduct.

62. Therefore, Plaintiff is entitled to all remedies and relief afforded by NYSHRL, including but not limited to, back pay, front pay, emotional distress, punitive damages, attorney's fees and costs, injunctive relief, and any other remedy or relief available under the law.

## *PRAYER FOR RELIEF*

**WHEREFORE**, Plaintiff prays judgment against the Defendants:

a. Awarding future income to Plaintiff in an amount to be proven at trial, representing all loss of future earnings, including reasonable and expected increases, loss of retirement income, and all other benefits he would have expected to earn during her entire lifetime had it not been for Defendant's unlawful discrimination;

b. Awarding general damages to the Plaintiff to make her whole for any losses suffered as a result of such unlawful employment practices;

c. Awarding Plaintiff compensatory damages for mental and emotional distress, pain and suffering as well as injury to her reputation in an amount to be proven at trial;

d. Awarding Plaintiff punitive damages;

e. Awarding Plaintiff attorneys' fees and costs and expenses incurred in the prosecution of the action;

f. Awarding all relief, remedies, and damages available to Plaintiff under the law; and

g. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

Dated: New York, New York
July 29, 2022

**LAW OFFICES OF WILLIAM CAFARO**

_____
Louis M. Leon, Esq.
*Attorneys for Plaintiff*
108 West 39th Street, Ste. 602
New York, New York 10018
Tel: (212) 583-7400
Email: lleon@cafaroesq.com